UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
NATIONAL UNION FIRE INSURANCE COMPANY          17 Civ. 7936
OF PITTSBURGH, PA., on behalf of
itself and its related insurers,               OPINION and ORDER

                        Petitioner,

    -against-

STUCCO SYSTEMS, LLC.,

                        Respondent.
-----------------------------------------X

A P P E A R A N C E S:


            Attorneys for Petitioner

            SIDLEY AUSTIN LLP
            787 Seventh Avenue
            New York, NY 10010
            By:  Nicholas P. Crowell, Esq.
                 Andrew D. Hart, Esq.
                 Richard J. Widmann, Esq.

            Attorney for Respondent

            THOMPSON KRONE, P.L.C.
            4601 E. Fort Lowell Road #109
            Tucson, AZ 85712
            By:  Evan L. Thompson, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**Sweet, D.J.**

Petitioner National Union Fire Insurance Company of Pittsburgh, PA ("National Union" or the "Petitioner") has moved by order to show cause to compel arbitration and for preliminary injunctive relief prohibiting Respondent Stucco Systems, LCC ("Stucco" or the "Respondent"), from pursuing litigation in Arizona state court.

For the reasons set forth below, Petitioner's motions cannot be resolved without an evidentiary hearing, which will be scheduled after consultation with the parties.

## Prior Proceedings

On October 16, 2017, Petitioner filed its petition to compel arbitration. Dkt. No. 1. On October 17, Petitioner submitted and the Court issued an order to show cause for a preliminary injunction enjoining Respondent from prosecuting a pending Arizona state court action prior to resolution of the instant motion to compel arbitration. Dkt. No. 3.

On December 12, 2017, the instant motions were heard and marked fully submitted.

1

**Facts**

The following facts are taken from the briefs, declarations, and accompanying exhibits submitted by the parties for the instant motions. They are undisputed except as otherwise noted.

In 1984, Walter Schuster ("Schuster") and Charles Nibley ("Nibley") formed a stucco plastering company called Arizona State Plastering, Inc., which later changed its name to ANSE, Inc. ("ANSE"). Declaration of Walter D. Schuster dated November 28, 2017 ("Schuster Decl.") ¶¶ 9-10. Christopher Harris ("Harris") became a shareholder and director of ANSE in 1993. Id. ¶ 15. ANSE was authorized to do business in Arizona, Nevada, and California. Id. ¶¶ 3, 11. In addition to ANSE, Schuster, Nibley, and Harris formed other limited liability companies ("LLCs") to performed stucco work in regions not serviced by ANSE, perform administrative work for the aforementioned LLCs, and rent equipment for the same LLCs. Id. ¶¶ 16-23.

Starting in 2001 and continuing through 2007, National Union provided products liability, general liability, and workers' compensation liability insurance coverage to ANSE and

2

others of the LCCs formed by Schuster, Nibley, and Harris (the "Payment Agreements"). Declaration of Nicholas P. Crowell dated October 17, 2017 ("Crowell Decl. I") ¶¶ 3-6. The Payment Agreements' insurance coverage required certain payment obligations by ANSE, and made ANSE's "predecessor and successor organizations, and each of [ANSE's] subsidiary, affiliated or associated organizations . . . jointly and severally liable" for those payments. Id. Ex. 1, at 4.

The Payment Agreements required that "any dispute[ ]" related to the amount of the payment obligations under the agreements or "[a]ny other unresolved dispute arising out of this Agreement must be submitted to arbitration" and "must be governed by the United States Arbitration Act." Id. Ex. 2, at 8-9. The Payment Agreements also contained a delegation clause, which stated that arbitrators would have "exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitability." Id. Ex. 2, at 9. Lastly, the Payment Agreements stated that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York." Id. Ex. 2, at 12.

3

In December 2004, the ANSE Board of Directors, comprised of Schuster, Nibley, and Harris, noted in the Board's Consent Resolution that "based on the desires of the shareholder's to either retire, sell to pursue other business ventures, or to pursue individual operations in the industry," that ANSE was going to reorganize its operations. Schuster Decl. ¶ 27, Ex. M, at 5. From 2005 through 2007, Schuster and Nibley sold their respective interests in different ANSE-affiliated LLCs and the ANSE Board of Directors approved downsizing and closing different operations around Arizona and Nevada. Id. ¶¶ 28-41. Nibley retired from ANSE in 2008, all ANSE employees were terminated in February 2009, and Harris resigned in December 2009; Schuster remained the only ANSE officer after 2009. Id. ¶¶ 39, 42, 47. Between 2006 and 2009, ANSE's total income declined from over $3 million to a loss of over $100,000. Id. ¶ 68; see id. Ex. Z.

In July 2008, Schuster and his wife, Marina Schuster ("Marina"), formed Stucco, a stucco contracting service licensed to do business in Arizona. Id. ¶ 49; Declaration of Marina Schuster dated November 27, 2017 ("Marina Decl.") ¶¶ 5-6. Stucco was initially capitalized with Schuster's personal funds.

4

Schuster Decl. ¶ 50, Ex. X; Marina Decl. ¶ 18. Stucco employed several former ANSE employees. See Declaration of Manuel D. Perez dated November 27, 2017 ("Perez Decl.") ¶¶ 2-23; Crowell Decl. I Ex. 7, at 121, 138-44. Stucco leased and operated out of property that had been previously purchased and used by ANSE. Schuster Decl. ¶¶ 12-13, 52. Stucco also purchased certain office supplies and other equipment from ANSE. Schuster Decl. ¶ 51, Ex. X. The parties dispute whether Stucco's purchases of ANSE's equipment was at fair market value. See id. ¶¶ 51, 66-67; Crowell Decl. I Ex. 7, at 24-25, 104-05, 148-49. From 2008 to 2009, Stucco's gross sales grew from $0 to almost $3.5 million. Supplemental Declaration of Nicholas P. Crowell dated December 8, 2017 ("Crowell Decl. II") ¶ 4-5, Exs. 3-4.

In January 2014, ANSE filed for bankruptcy reorganization under Chapter 11 of Title 11 of the United States Code in the Bankruptcy Court of the District of Arizona. Schuster Decl. ¶ 56; Declaration of Evan L. Thompson dated November 27, 2017 ("Thompson Decl.") ¶¶ 3. During that proceeding, National Union sought discovery against ANSE and Stucco, including taking a deposition of Schuster. Thompson Decl. ¶¶ 4-8. On June 10, 2015, National Union filed a Protective Motion to Lift the Bankruptcy Stay and Allow Pursuit of Claim Against Stucco Systems (the

5

"Lift Motion"). Id. ¶ 9. Several hearings were held before the Bankruptcy Court, during which the ANSE bankruptcy was converted to a Chapter 7 bankruptcy, but without judicial resolution on National Union's Lift Motion. See id. ¶¶ 11-13.

On September 1, 2016, the United States Trustee ("U.S. Trustee") brought an adversary proceeding complaint against Stucco, Schuster, and Marina, which alleged that Stucco was a successor-in-interest to ANSE. Id. ¶ 16. A settlement of the adversary proceeding against Stucco and others was reached on January 31, 2017, to which National Union objected. Id. ¶¶ 16-19. On June 20, 2017, the Bankruptcy Court held a hearing on the proposed settlement agreement, during which the Bankruptcy Court stated, *inter alia*, that it was "not going to make a finding . . . to determine whether those claims – what the fight is between those parties [National Union and Stucco]" and was "making no determination" as to "any claims held by third parties against other non-debtor entities, including the settling parties." Crowell Decl. II Ex. 2, at 9:10-12, 16:23-25, 17:7-8. On June 30, 2017, National Union withdrew its Protective Motion. Crowell Decl. II ¶ 9. On August 23, 2017, the Bankruptcy Court approved the Trustee's Application to Compromise Claims of the Estate and

to Execute Settlement Agreement and Release. Thompson Decl.
¶ 24.

On July 17, 2017, National Union filed an Amended Demand
for Arbitration against Stucco in New York. Crowell Decl. I
¶ 13, Ex. 10; Thompson Decl. ¶ 22. On August 16, 2017, Stucco
filed an Application to Stay of Arbitration and Temporary
Restraining Order in Maricopa County, Arizona, which was denied
on August 25. See Crowell Decl. I ¶ 10, Ex. 8.

**Applicable Standards**

1.  Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*,
provides, in relevant part, that "[a] written provision in any .
. . contract evidencing a transaction involving commerce to
settle by arbitration . . . shall be valid, irrevocable, and
enforceable, save upon such grounds as exist in law or in equity
for the revocation of any contract." 9 U.S.C. § 2. This
provision of the FAA establishes "a liberal federal policy
favoring arbitration agreements." Moses H. Cone Mem. Hosp. v.
Mercury Constr. Corp., 460 U.S. 1, 24 (1983); see also Schreiber

v. K-Sea Transp. Corp., 9 N.Y.3d 331, 337, 849 N.Y.S.2d 194
(2007) (citing Moses H. Cone, 460 U.S. at 24). "In the context
of motions to compel arbitration brought under the [FAA] the
court applies a standard similar to that applicable for a motion
for summary judgment. If there is an issue of fact as to the
making of the agreement for arbitration, then a trial is
necessary." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir.
2003) (internal citations omitted).

In deciding whether parties can be compelled to arbitrate
federal causes of action pursuant to the FAA, a court must
determine: (1) whether the parties agreed to arbitration; (2)
the scope of that agreement; (3) if federal statutory claims are
asserted, whether Congress intended those claims to be
nonarbitrable; and (4) if some, but not all, of the claims in
the case are arbitrable, it must determine whether to stay the
balance of the proceedings pending arbitration. JLM Indus., Inc.
v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004). For
claims involving non-federal statutes, the test is shorter: (1)
whether the parties agreed to arbitrate disputes at all and (2)
whether the dispute at issue comes within the scope of the
arbitration agreement. ACE Capital Re Overseas Ltd. v. Cent.
United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002).

8

## 2. Preliminary Injunction

The general purpose of a preliminary injunction is to avoid irreparable injury to the movant and to preserve the court's power to render a meaningful decision after a trial on the merits. See WarnerVision Entm't Inc. v. Empire of Carolina, Inc., 101 F.3d 259, 261 (2d Cir. 1996). A preliminary injunction is an "extraordinary remedy" that is never awarded "as of right." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008); see also Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 65 (2d Cir. 2007). Whether injunctive relief should issue or not "rests in the sound discretion of the district court which, absent abuse of discretion, will not be disturbed on appeal." Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (citation omitted).

A party seeking a preliminary injunction must establish: (1) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; (2) irreparable harm; and (3) that issuance of the injunction would

9

be in the public interest. See Oneida Nation of N.Y. v. Cuomo,
645 F.3d 154, 164 (2d Cir. 2011) (internal quotations and
citations omitted); Red Earth LLC v. United States, 657 F.3d
138, 143 (2d Cir. 2011).

On a motion for preliminary injunction, if "'essential
facts are in dispute, there must be a hearing . . . and
appropriate findings of fact must be made.'" Republic of
Philippines v. N.Y. Land Co., 852 F.2d 33, 37 (2d Cir.1988)
(quoting Fengler v. Numismatic Americana, Inc., 832 F.2d 745,
747 (2d Cir. 1987) (alteration omitted). However, an
"evidentiary hearing is not required when the relevant facts
either are not in dispute or have been clearly demonstrated at
prior stages of the case . . . or when the disputed facts are
amenable to complete resolution on a paper record." Charette v.
Town of Oyster Bay, 159 F.3d 749, 755 (2d Cir. 1998) (citation
omitted).

Pursuant to Federal Rule of Civil Procedure 52(a), in
granting or refusing a preliminary injunction, the court shall
set forth "the findings of fact and conclusions of law" which
constitute the grounds of its action. The Second Circuit has
stated that "[t]hese findings are not conclusive, and may be

10

altered after a trial on the merits." Visual Scis., Inc. v. Integrated Commc'ns Inc., 660 F.2d 56, 58 (2d Cir. 1981) (citing Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)).

## **Petitioner's Motions Require an Evidentiary Hearing**

Petitioner seeks to compel Stucco to arbitrate under the terms of the Payment Agreements. Although a non-signatory, Petitioner contends that Stucco is subject to the Payment Agreement's terms because Stucco is a successor-in-interest to ANSE, a signatory, and the parties' dispute falls squarely under the terms of the Payment Agreements. Petitioner argues that under the agreements' delegation clause, all questions of arbitrability, which would include whether Stucco is a successor-in-interest to ANSE, need to be determined by arbitrators. Respondent argues that the issue of successor liability was determined by the Bankruptcy Court in Stucco's favor, estopping Petitioner's argument here and, even if not, that Stucco is a distinct corporate entity from ANSE and not bound by the Payment Agreements. The question of collateral estoppel will be considered first, followed by the question of successor liability.

11

1.  The Question of Successor Liability is Not
    Collaterally Estopped

The doctrine of collateral estoppel, sometimes called issue preclusion, forecloses "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892 (2008). "By preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate, claim preclusion and issue preclusion protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." Schwartz v. HSBC Bank USA, N.A., 160 F. Supp. 3d 666, 674 (S.D.N.Y. 2016) (alterations in original) (internal quotation marks omitted) (quoting Taylor, 553 U.S. at 892). "For collateral estoppel to apply, four elements must be satisfied: [i] the issues of both proceedings must be identical, [ii] the relevant issues were actually litigated and decided in the prior proceeding, [iii] there must have been full and fair opportunity for the litigation of the issues in the prior proceeding, and [iv] the issues were necessary to support a valid and final

judgment on the merits." Kehoe v. Int'l All. of Theatrical Stage
Employees, No. 15 Civ. 5110 (KPF), 2017 WL 570932, at *3
(S.D.N.Y. Feb. 13, 2017) (internal quotation marks and citation
omitted).

Respondent avers that the issue of Stucco's successor
liability was fully and fairly litigated during the adversary
proceeding brought during ANSE's bankruptcy. This argument is
not persuasive. To be sure, the issue of whether Stucco is
ANSE's successor-in-interest was raised, repeatedly, by National
Union during ANSE's bankruptcy proceeding and the U.S. Trustee's
adversary proceeding. See Thompson Decl. ¶¶ 9-13, 19. However,
during those same proceedings, the Bankruptcy Court stated,
repeatedly, that it was not addressing National Union's
successor liability claims. Rather, the Bankruptcy Court
specifically noted that accepting the U.S. Trustee's settlement
with Stucco did not require resolution on the "fight between
those parties [National Union and Stucco]" as to successor
liability because "it is not the intent of the trustee to
release any claims held by third parties against other non-
debtor entities, including the settling parties." Crowell Decl.
II Ex. 2, at 9:12, 16:22-25; see also id. Ex. 2, at 7:22-25,
8:10-20, 13:6-8, Ex. H. Moreover, the Bankruptcy Court never

13

ruled on National Union's motion to lift the bankruptcy stay against ANSE so National Union could pursue its claim. See id. Ex. R.

At most, Respondent can point to the fact that the Bankruptcy Court accepted the settlement terms presented by the U.S. Trustee over National Union's objection and submitted counter-settlement proposal, which carved-out National Union's ability to pursue litigation against. See id. Ex. S. This singular action by the Bankruptcy Court is not enough. "[A] court-approved settlement agreement does not fulfill the requirement of actual litigation for purposes of collateral estoppel." Music Sales Corp. v. Morris, 73 F. Supp. 2d 364, 377 (S.D.N.Y. 1999); see also Arizona v. California, 530 U.S. 392, 414 (2000) ("[S]ettlements ordinarily occasion no issue preclusion (sometimes called collateral estoppel), unless it is clear . . . that the parties intended their argument to have such effect."). The Bankruptcy Court did not actually decide the issue of successor liability in resolving the ANSE bankruptcy proceeding. Accordingly, Petitioner is not barred by collateral estoppel in the instant proceeding from arguing that Stucco is a successor-in-interest to ANSE.

## 2. This Court Will Decide The Successor Liability Question

As the question of successor liability remains unresolved, the logical next question is who should adjudicate that fact. Petitioner contends that arbitrators must decide, because the Payment Agreements' delegation clause states that arbitrators shall have "exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." Crowell Decl. I Ex. 3, at 9. While the Payment Agreement's delegation clause might ultimately prove useful in compelling arbitration, Petitioner asks too much of it at present.

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." Schneider v. Kingdom of Thailand, 688 F.3d 68, 71 (2d Cir. 2012) (alterations and emphasis in original) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)). "[W]hether an entity is a party to the arbitration agreement also is included within the broader issue of whether the parties agreed to arbitrate." Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 95 (2d Cir. 1999). A

15

delegation clause, "an agreement to arbitrate threshold issues concerning the arbitration agreement," is the kind of inclusion that courts accept as a submission of particular questions for arbitrator decisions. Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). However, "[c]ourts have generally found that agreements that do not mention or reference a particular non-signatory do not clearly or unmistakably evidence an agreement by that non-signatory to have an arbitrator determine whether the agreement is arbitrable." McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co., No. 14 Civ. 6633 (KBF), 2015 WL 144190, at *5 (S.D.N.Y. Jan. 12, 2015) (collecting cases).

Here, Stucco is not a signatory to the Payment Agreements, only National Union and ANSE are, and there is nothing in the Payment Agreements that "mentions" or "references" Stucco. Simply stating that the Payment Agreements cover ANSE's "successor organizations," Crowell Decl. I Ex. 1, at 4, is not a "and unmistakable agreement to arbitrate" on the part of Stucco. McKenna Long & Aldridge, 2015 WL 144190, at *5. This absence is fatal to Petitioner's delegation clause argument. To use the delegation clause to demand that arbitrators settle the question of who are the parties to the agreement puts the proverbial cart—the question of whether the arbitration agreement is valid—

16

before the horse—whether a non-signatory has anything to do with a contract it did not clearly sign. Cf. First Am. Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC, 540 F. Supp. 2d 483, 485 (S.D.N.Y. 2008) (holding that it was for the court to decide whether non-signatory defendant, contested as a successor-in-interest to a non-party signatory, could compel arbitration against a signatory plaintiff "prior to the arbitration hearing" because "there is much to be said for determining who are the parties to the arbitration before the arbitrators hear the merits").

The authorities Petitioner cites both in briefing and at oral argument are inapplicable to the present circumstance because they, unlike Petitioner's reasoning, distinguish between whether a signatory or non-signatory is being compelled to arbitrate. For example, in Contec Corp. v. Remote Sol., Co., 398 F.3d 205 (2d Cir. 2005), the Second Circuit considered whether a non-signatory plaintiff could compel a signatory defendant to submit to an arbitrator whether a valid arbitration agreement existed between the parties in accordance with a delegation clause. See id. at 207-09. The plaintiff in Contec was an undisputed successor corporation to a corporation that did sign the agreement with defendant, and both Contec and its

17

predecessor continued to conduct themselves as subject to the agreement regardless of change in corporate form with the defendant. See id. at 209. Having found a "sufficient relationship . . . between the parties," the Contec court concluded that, as a signatory, the defendant could not "disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability" with the non-signatory successor. Id. at 209-10 (emphasis in original). Such reasoning does not apply here, which is the inverse of the situation in Contec: here, it is the signatory that is seeking to enforce the arbitration agreement against a non-signatory, and the relationship between ANSE and Stucco is contested. Cf. MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 62 (2d Cir. 2001) (internal quotation marks omitted) (emphasis in original) (stating, in the context of estoppel theory, that while a court can prevent a "signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed, and the signatory and nonsignatory parties share a close relationship . . . the reverse is not also true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of

how closely affiliated that nonsignatory is with another signing party").

Similarly inapposite is Doctor's Assocs., Inc. v. Repins, No. 17 Civ. 323 (JCH), 2017 WL 1745024 (D. Conn. May 4, 2017). There, the parties signed a franchise agreement that contained an arbitration clause and a delegation clause. Id., 2017 WL 1745024, at *1. In sending the questions of unconscionability and arbitration location to the arbitrators, the court found that the delegation clause was "'clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator.'" Id., 2017 WL 1745024, at *5 (quoting Contec, 398 F.3d at 208). There, no issue was raised that the parties being compelled to arbitrate had bargained for that delegation clause. By contrast, that issue forms the crux of Respondent's opposition: that Stucco, a non-signatory, has no relationship to any signatory to, and is not clearly indicated in, the Payment Agreements.

There is no clear and unmistakable indication of the signatory parties that that Stucco is to be bound to the terms of the Payment Agreements. Accordingly, whether Respondent is to

19

be a party to the Payment Agreements is an issue for judicial
determination first. See id. (evaluating a non-signatory's
successor liability after merging with a corporation that was a
signatory to an arbitration agreement, even with a delegation
clause present); McKenna Long & Aldridge, 2015 WL 144190, at *5
(holding, in the absence of a "clear and unmistakable agreement
to arbitrate" on the part of a non-signatory party that the
"question of arbitrability in these matters is therefore a
matter for judicial determination"); Oehme, van Sweden &
Assocs., Inc. v. Maypaul Trading & Servs. Ltd., 902 F. Supp. 2d
87, 97 (D.D.C. 2012) ("Because [non-signatory respondent] did
not clearly and unmistakably agree to arbitrate arbitrability,
the Court will independently decide whether she is bound to
arbitrate under the Agreement.").

### 3. An Evidentiary Hearing Is Necessary To Resolve The Question of Successor Liability

In the absence of an express arbitration agreement, there
are "'limited theories . . . to enforce an arbitration agreement
against a non-signatory." Merrill Lynch Inv. Managers v.
Opibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003) (internal
citation and quotation marks omitted). The Second Circuit has
noted five: "1) incorporation by reference; 2) assumption; 3)

20

agency; 4) veil-piercing/alter ego; and 5) estoppel." Id.
(internal quotation marks omitted) (quoting Thomson-CSF, S.A. v.
Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).
Petitioner contends that Respondent is an alter ego and
successor-in-interest of ANSE, a corporation that is an
uncontested signatory to the Payment Agreements. See, e.g.,
Ryan, Beck & Co., LLC. v. Fakih, 268 F. Supp. 2d 210, 229
(E.D.N.Y. 2003) (citation omitted) (noting that, under certain
circumstances, "another entity can be held to have assumed the
predecessor's liabilities: a 'de facto merger' of the two
entities; a 'mere continuance' of the predecessor by the
successor; or a fraudulent transfer"). Thus, whether Respondent
should be compelled to arbitrate under the terms of the Payment
Agreements is based on whether Stucco is a successor-in-interest
to ANSE.

Under Arizona law, which the parties agree applies here,
"[a] corporation that acquires the assets of another corporation
generally is not liable as a successor for the debts or
liabilities of its predecessor unless: '(1) there is an express
or implied agreement of assumption, (2) the transaction amounts
to a consolidation or merger of the two corporations, (3) the
purchasing corporation is a mere continuation [or reincarnation]

of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.'" Beals v. Moore, No. 2 CA-CV 2008-0090, 2009 WL 499531, at *4 (Ariz. Ct. App. Feb. 27, 2009) (quoting A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co., 172 Ariz. 324, 329, 836 P.2d 1034, 1039 (Ct. App. 1992)).[1] When evaluating whether a successor corporation is a mere continuation of another corporation, as argued here, a "crucial factor" is "whether there is a substantial similarity in the ownership and control of the two corporations (e.g., identical directors, officers, stockholders, goods and services, and location" and whether "there [was] insufficient consideration running from the new company to the old." A.R. Teeters, 172 Ariz. at 329-30 (internal citations omitted).

There are contested issues of fact that need resolution to settle the issue of successor liability. For example, it is factually disputed whether the acquisitions Stucco made from ANSE were for adequate consideration. There are contested facts as to the degree that Stucco provided the same types of services

[1]     When determining whether a successor-in-interest is bound by the terms of a contract, courts in this circuit look to the substantive law of the state of incorporation of the relevant entity. See, e.g., Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp., 971 F. Supp. 2d 368, 375 (S.D.N.Y. 2013) (collecting cases).

22

as ANSE over the same area and from the same location. Whether

ANSE and Stucco had similar or identical management is also a

fact needed to be found. An evidentiary hearing, which was

requested by the parties at oral argument and the Court agrees

would be beneficial, is necessary to make these findings. See,

e.g., A/S Custodia v. Lessin Int'l, Inc., 503 F.2d 318, 320 (2d

Cir. 1974) (holding that a district court must conduct an

evidentiary hearing where there are disputed issues of fact on

the question of whether a non-signatory to an arbitration

agreement can be compelled to arbitrate).

## Conclusion

For the foregoing reasons, Petitioner's motions will be resolved following an evidentiary hearing. The parties are instructed to meet and confer and submit to the Court a proposed schedule for the hearing and, if necessary, for limited discovery on the issue of Respondent's successor liability.

It is so ordered.

**New York, NY**
**January 25, 2018**

ROBERT W. SWEET
**U.S.D.J.**

24